CUMMINGS v. The IRMA. See Case No. 7,-064.

Case No. 3,476.

CUMMINGS v. MEAD.

[6 Am. Law Reg. 51.]

District Court, D. Wisconsin. 1857.

PROMISSORY NOTES — SETTLEMENT OF PRE-EXISTING DEBT—BONA FIDE HOLDER—FRAUD.

1. Where negotiable paper has been put in circulation by fraud, proof of the circumstances may be given; when it is incumbent on the

holder to show that he is a holder bona fide, and for a valuable consideration.

2. If a negotiable note is accepted in satisfaction of a previous debt, the person so receiving it is a holder for value, and is protected. But not so when a note is handed over to a creditor, with directions to collect it and to retain the surplus, and afterwards the debt was settled. It then reverted to the former holder.

3. Unless a note is taken in good faith for a valuable consideration, the holder is considered as being in privity with the endorsee. A merchant having purchased a note at an extraordinary rate of discount, after he learned that the payees, as merchants, had failed, and that the money was wanted to pay preferred debts, is not a bona fide holder against the previous lien of a judgment creditor's bill,—particularly if the parties to the negotiation are relatives. He should have inquired into the circumstances of the holders.

[This was a bill in equity by Patrick Cummings and William Murray against William D. Mead.]

MILLER, District Judge. William D. Mead paid into court the amount of this judgment, when Jacob Shear and others and Samuel F. Pratt and others made their several applications that it be paid to them. These parties had obtained judgments in this court against John C. Burr and Morgan Craig; and, after the return of executions unsatisfied, they filed creditors' bill in equity against said Burr and Craig, and also against Mead. Injunctions were issued and served, restraining the defendants from disposing of or in any manner parting with any money, promissory notes of, or other property belonging to, said Burr and Craig. The injunctions were issued and served on the fourth of August, 1856, and an order of reference for the appointment of a receiver. [Pratt v. Burr, Case No. 11,373.] On the second of December following, Cummings and Murray recovered a judgment in this court against Mead, upon a promissory note made by him to said Burr and Craig, or bearer, the amount of which is now for appropriation by this court. These creditors of Burr and Craig allege that the promissory note on which the judgment was rendered against Mead was in the hands of Burr and Craig, or one of them, at the time their bills in equity were filed and injunction issued, and that Cummings and Murray are not bona fide holders for a valuable consideration.

The deposition of Robert H. Maynard was read at the hearing, in which he states that he is a merchant in the city of Buffalo, in the state of New York. He received the note of Burr about the middle of August, 1856, at Buffalo. He took two notes of Mead to Burr and Craig, of one thousand dollars each, for which he gave fifteen hundred dollars. He knew Burr before that. He had married his (Burr's) sister. He had, before that, understood that the firm of Burr and Craig had stopped payment; he did not know they were in litigation with any person at Beloit, Wisconsin (where they had

been in business as merchants), or elsewhere. He did not know or inquire for what consideration the notes were given. He gave Burr his check on the Bank of Attica for fifteen hundred dollars, bearing date September 8th, 1856. He delivered this note to Cummings and Murray, whom he owed about five hundred dollars, and told them to credit him with it—to collect it and credit it to him, and the balance he would take. The account of Cummings and Murray has since been settled, and the note is not settled yet. The purchase of the two notes of Burr was absolute. The note he let Cummings and Murray have, had about twenty or thirty days to run, after he bought it. The other note had about four months to run. Burr attempted to sell the notes at a broker's, in Buffalo; but he could not sell them without an endorsement. He then proposed to him to sell the notes, at fifteen hundred dollars. Burr said the notes were good; that the maker was worth twenty thousand dollars, and had real estate in the state of New York. Burr said he wanted to pay some confidential debts with the money. The broker offered, if he (Maynard) would endorse the notes, to take them at the usual rates, of from three to five per cent. per month for western paper, which he refused. The judgment creditors' bills having been filed, while the note was in the hands of the judgment debtors, Burr and Craig, an equitable lien was thereby created on the note in their hands, and on the debt secured by it, in the hands of Mead the maker. Subsequently, Burr, one of the defendants and one of the payees in the note, committed a fraud upon those creditors, and also upon the court, by transferring the note to Maynard, in the city of Buffalo. Those creditors claim the money collected on the note, by virtue of their bills in equity. And they contend that the note was put in circulation by the payees, Burr and Craig, fraudulently; and that Maynard was not a bona fide purchaser of it from Burr and Craig; and also that it was not transferred to Cummings and Murray in the regular course of commercial business, for a valuable consideration. Burr and Craig have not made an answer, nor given any explanation of the matter. Nor have they attempted to show what was done with the fifteen hundred dollars received for the notes. This case stands as a bill in equity, at the suit of the creditors, against Burr and Craig, and also against Mead, Cummings and Murray, taken as confessed against Burr and Craig. The rule is "that when negotiable paper has been stolen, or lost, or obtained by duress, and is put in circulation by fraud, proof of these circumstances may be given against the plaintiff; and, on such proof being given, it is incumbent on the plaintiff to show himself to be a holder, bona fide and for a valuable consideration; otherwise, he is considered as standing in no better situation than the former

holder, in whose hands the instrument received the taint." Part only of this principle is applicable to the present case; for the note is paid,—and the question of the holder's title is raised, not to let in a defence of the debtor, but to meet a hostile claim of title to the money, which the creditors assert by virtue of their bills in equity. That the note was put in circulation fraudulently by the payees, there is no doubt.

I shall first inquire into the nature of the transfer of the note to Cummings and Murray by Maynard. It is well settled that, if a negotiable note is accepted in satisfaction and discharge or extinguishment of a previous debt or liability, the person so receiving the note is a holder for value, and is protected against equities. Swift v. Tyson, 16 Pet. [41 U. S.] 1, 1 Am. Lead. Cas. 191. But that is not this case. Maynard only owed Cummings and Murray five hundred dollars, which he ordered paid out of the avails of the note, and the residue to be returned to him. There is no allegation that the note, or any part of it, was intended to pay future advances to Maynard. And it appears that the account of Cummings and Murray against Maynard has been settled. Maynard continued to claim an interest in one-half of the avails of the note, which he was to draw from Cummings and Murray when collected. But in the settlement of the account the whole note reverted to Maynard. If the claim of these creditors did not interpose, Maynard would be entitled to draw out this money. I am clear that Cummings and Murray are not entitled to the money in their own right. If those creditors are not entitled to it, Maynard is; and Cummings and Murray may be considered as mere parties in the record in trust for, or for the use of Maynard. Promissory notes carry their whole evidence of title on their face; and the law assures the right to him who obtains them for valuable consideration, by regular endorsement or delivery, and without actual notice of an adverse claim, or of such suspicious circumstances as should lead to inquiry. The doctrine of implied notice by lis pendens is inapplicable to such cases generally of attachments and garnishee process. Such proceeding has been held unavailable against a bona fide holder of negotiable paper, who claims it after attachment, before maturity, and without notice. Kieffer v. Ehler, 6 Harris [18 Pa. St.] 388. An attachment is a special proceeding issued by any court or magistrate for a debt. In a case of bankruptcy, notice may be implied, because that refers to the general circumstances of a previous holder, into which a purchaser is expected to inquire. If a man becomes a bankrupt, all his property, in which he is beneficially interested, is vested by the assignment in the assignees, by relation to the act of bankruptcy, so as to defeat all intermediate acts done by him to dispose of his property; and consequently the right of transfer of a bill or note is in general vested

in them from the time of the act of bankruptcy; and the defect of title in the endorser may be taken advantage of under the plea of non assumpsit. Chitty, Bills (London Ed.) 149. And on page 618 it appears that bills of exchange and promissory notes endorsed by a bankrupt after he had dishonored bills, and been otherwise irregular in his payments, may be retained by the endorsee, unless it were known to him at the time that the insolvency of the bankrupt was decidedly a general inability to answer his engagements. The proceeding in equity, by judgment creditors' bill, is not a commission in bankruptcy, but in effect as to the property of the debtor, it is similar to it. In both cases the property of the debtor is a fund in court for the payment of debt. The court retains possession of the fund, for distribution among creditors according to principles governing the proceeding. And while the property is in the custody of the court, no sale of it can be made, either on execution, or otherwise, without leave of the court. By this proceeding in equity, all the estate of the debtor is bound from the filing of the bill and service of process, and is virtually sequestered. Even a judicial sale of real estate, under execution upon a prior judgment is void. Wiswall v. Sampson, 14 How. [55 U. S.] 52. This proceeding against failing merchants is as common here, as bankrupt commissions in England. But whether an endorsee as purchaser of negotiable paper of a merchant, after the filing of a creditors' bill against a payee or endorser, should be held to stand in the same situation as the endorsee of a bankrupt, I need not determine. This proceeding almost uniformly follows the failure of mercantile firms; and it is confined to the circuit courts of the state, and to this court. Burr and Craig were merchants in Beloit, in this state, and Maynard was informed that the firm had stopped payment, at the time he purchased the notes of Burr, and thereby he supplied him with money to pay confidential or preferred debts of the firm. One note was payable thirty days after the date of Maynard's check for the purchase money, and the other had but three months to run after that date. The usual rate of discount of western paper was from three to five per cent. per month; but the rate at which these notes were purchased was ten per cent. per month, upon the assurance that the maker was perfectly good and owned real estate in the state of New York. Unless a note is taken in good faith, for a valuable consideration and without notice, the holder is considered as being in privity with the endorser. This privity is created when the note is taken under suspicious circumstances, such as ought to have put the endorsee on his guard, and would have alarmed a man of ordinary prudence. Such is the rule of the American cases generally, and of the early English cases; but it is restricted by later English cases to such

circumstances as not only show gross negligence on the part of the endorsee, but actual mala fides. 1 Smith, Lead. Cas. in notes, 447, etc., and cases there cited.

I do not think there is any difference in principle, whether the circumstances of suspicion arise from a note over due, or a bill dishonored, or from marks or characters on the face of the paper, as in Fowler v. Brantly, 14 Pet. [39 U. S.] 318; or from facts communicated and made known dehors the paper. Maynard had notice of the general inability of Burr and Craig to pay their debts, which would defeat his claim to the money as against an assignee in bankruptcy. He had notice of sufficient facts to induce him, as a prudent man, to inquire more into the circumstances of Burr and Craig, before purchasing the notes. From the notice he had, and the extraordinary discount allowed by Burr, the suspicion of a prudent and careful man would naturally be excited; and he should feel it his duty to ask questions, which, in the ordinary and proper manner in which trade is conducted, he ought to ask respecting the holder's circumstances. To protect the endorsee, a valuable consideration paid, with due and reasonable caution, is necessary. If Maynard, after receiving notice of the failure of Burr and Craig, and that the notes were for sale at a discount of ten per cent. per month, to pay preferred debts, had inquired of Burr, he might have learned of the proceedings in this court, and of the escape of Burr from this jurisdiction, to avoid the service of process, and the assignment of his property to a receiver. To place Maynard in the most favorable position, he is a voluntary purchaser of the note for a valuable consideration, but not in good faith, as he did not use the caution necessary to inform himself of the circumstances of Burr and Craig, the payees, and of their right to negotiate the note.

So far I have treated Maynard as a stranger to Burr; but he was not. Burr and he are brothers-in-law. Maynard could legally purchase a note, or anything else, from his brother-in-law; but the relationship existing between them is a fact which holds him to stricter proof of the bona fides of the transaction than is required of a stranger, when the right to make the negotiation is disputed by creditors. The transfer of property by a relative in failing, in embarrassed circumstances, to a relative, is a suspicious circumstance, that must, in all cases, be clearly and satisfactorily explained. The money will not be paid to Cummings and Murray, but to these creditors of Burr and Craig.

___

CUMMINGS (SMITH v.). See Case No. 13,034.

CUMMINGS (UNITED STATES v.). See Case No. 14,900.

CUMMINGS, The WILLIAM. See Case No. 17,690.

CUMMINS (BADISCHE ANILIN & SODA FABRIK v.). See Case No. 720.

CUMMINS (CHRISTY v.). See Case No. 2,708.

CUMMINS (CRAIG v.). See Case No. 3,331.

CUMMINS (ERWIN v.). See Case No. 4,525.

CUMMINS (McCLINTICK v.). See Cases Nos. 8,698 and 8,699.

CUMMINS (UNITED STATES v.). See Case No. 14,901.

CUMPTON (UNITED STATES v.). See Case No. 14,902.

CUNARD (JEWETT v.). See Case No. 7,310.

CUNARD, The JOSEPH. See Case No. 7,535.